NOT FOR PUBLICATION                              [Dkt. Ent. 24]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CARMEN GUNTHER,

     Plaintiff,                     Civil No. 13-04739 (RMB)

        v.                              **OPINION**

THE SHELTER GROUP,
BRIGHTVIEW SENIOR LIVING, LLC
and JOHN DOES 1-5 and 6-10,

     Defendants.

**APPEARANCES:**

Kevin M. Costello
Costello & Mains, P.C.
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
     Attorney for Plaintiff

Charles R. Cohen
Cohn Lifland Pearlman Herrman & Knopf, LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
     Attorney for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a motion to dismiss
for failure to state an actionable claim, pursuant to Federal
Rule of Civil Procedure 12(b)(6), by Defendants, The Shelter
Group and Brightview Senior Living, LLC (individually, "Shelter"
and "Brightview," and, collectively, "Defendants"). For the

reasons that follow, Defendants' motion to dismiss is denied in part and granted in part.

I.    **Background**

Plaintiff was employed as the Resident Services Coordinator of the Wellspring Unit at Brightview. (Compl. ¶¶ 6-7.) At some point in October 2012, a new resident, P.L., moved into the facility.[1] (Id. at ¶ 13; Ex. D to Declaration of Ellie LaMartina, Dkt. Ent. 24.) Defendants contend that P.L. suffered from dementia and was taking medication for his cognitive impairment. (Defs.' Br. at 4.) According to the Complaint, P.L. purportedly fondled a female concierge and exposed himself to others on his first day in the facility. (Compl. ¶¶ 18-19.) He was soon transferred into the Wellspring Unit where Plaintiff worked. (Id. at ¶ 20.)

According to the Complaint, P.L. grabbed or attempted to grab Plaintiff's rear end on at least six specific occasions. (Id. at ¶¶ 21, 24, 36, 41, 50, 53.) After the first incident, Plaintiff alleges that she reported P.L.'s conduct to her immediate supervisor, Shirley Gil. (Id. at ¶ 22.) Gil informed Plaintiff, "We're working on getting [P.L.] the proper medication." (Id. at ¶ 23.) A few days later, P.L. allegedly grabbed Plaintiff's rear end a second time, after which

---

[1] Defendants dispute the date of P.L.'s admission to the Brightview facility, asserting that he did not move in until November 14, 2012. (See Ex. D.)

Plaintiff reported the conduct to the Executive Director of Brightview, Lavanda Clinkscales. (Id. at ¶¶ 24-25.) The Program Assistant, Virginia Campbell, was present when Plaintiff reported the incident and said, "I got it, I told him I was going to call his son and he said he wasn't going to do it again." (Id. at ¶ 26.) According to Plaintiff, Clinkscales took no further action. (Id. at ¶ 27.) Later that day, however, P.L. engaged in a sexually explicit conversation with other residents, who complained to Plaintiff about P.L.'s behavior. (Id. at ¶¶ 28-29.) Although Plaintiff told P.L. he could not speak like that, he then made several sexually explicit statements to Plaintiff. (Id. at ¶¶ 30-33.) At some point later in the day, P.L. tried to grab Plaintiff's rear end, and Plaintiff reported his conduct to another supervisor, Juanita Parker. (Id. at ¶¶ 36-37.) Plaintiff also completed an incident report regarding P.L.'s conduct towards another resident. (Id. at ¶ 38.) Thereafter, Plaintiff alleges that she was forced "to push P.L. away on an almost daily basis" to prevent further groping. (Id.) During this time, P.L. also touched other female staff. (Id. at ¶ 40.)

Then, on November 29, 2012, P.L. grabbed Plaintiff's rear end again. (Id. at ¶ 41.) When Plaintiff reprimanded P.L. for his conduct, he allegedly screamed at her and pushed her up against a wall "with his fist up in the air, ready to strike her

in the face." (Id. at ¶¶ 42-43). Gil was immediately notified of
the incident. (Id. at ¶ 44.) Plaintiff then emailed Parker to
advise her that Plaintiff could no longer fulfill her full-time
status, that she would type up a formal resignation, and that
she wished to discuss her future schedule. (Id. at ¶¶ 45-46; see
also Ex. F.) According to Plaintiff, however, she intended only
to resign her full-time position in favor of taking a part-time
position. (Compl. ¶ 47.)

On the following day, P.L. yet again grabbed Plaintiff's
rear end. (Id. at ¶ 50). Plaintiff reported the conduct to Gil,
who informed Plaintiff "[to not] write up an incident report,
because [Gil had] to talk to the family about what happened [the
previous day]." (Id. at ¶¶ 51-52.) P.L. grabbed Plaintiff's rear
end in the following days. Plaintiff asked Gil when P.L. would
be leaving the facility because she was tired of him touching
and pushing her, but Plaintiff allegedly received no response.
(Id. at ¶¶ 54-58.) Plaintiff approached Clinkscales with the
same question, but was directed back to Gil.

The next day, on December 5, 2012, Plaintiff called out
sick. Upon her return to work on December 6, Parker sent
Plaintiff home. (Id. at ¶¶ 59-60.) Plaintiff contacted
Clinkscales who told her she was tired of Plaintiff's complaints
and that she should not return to work. (Id. at ¶¶ 61-62.)

Plaintiff commenced this action against Defendants, bringing claims for sexual harassment, retaliatory discharge, and equitable relief under the New Jersey Law Against Discrimination ("NJLAD"). The Complaint alleges that Defendants were aware of P.L.'s conduct but failed to stop it, and were negligent in failing to promulgate adequate sexual harassment policies directed toward patient conduct. (Id. at ¶¶ 71-73.)

## II.    Standard of Review

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "[A]n unadorned, the-defendant-unlawfully harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, in reviewing a plaintiff's allegations, the

district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

### III.    Analysis

Defendants seek dismissal of the Complaint in its entirety as well as dismissal of all claims against Shelter, Brightview's parent corporation. Before turning to the substantive arguments of Defendants' motion, the Court must address the numerous exhibits attached to Defendants' motion and which Defendants rely upon in seeking dismissal of Plaintiff's claims. In general, a district court is not permitted to consider "matters extraneous to the pleadings" when ruling on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright & Miller, Fed. Prac. & Proc.: Civil 2d § 1357; Chester Cty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). An "extraneous" document may be considered if it is "'integral to or explicitly relied upon in

the complaint[.]'" <u>In re Burlington Coat Factory Sec. Litig.</u>,
114 F.3d at 1426 (quoting <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d
1194, 1220 (1st Cir. 1996)).

Defendants essentially seek consideration of certain
exhibits on grounds that the Complaint and the documents address
the same facts. For example, they contend that this Court may
consider a letter offer of employment simply because Plaintiff
has pled that Brightview hired her. This is not the test. In
fact, the Court finds that many of Defendants' proposed exhibits
do not form the basis of Plaintiff's claims (Exhibits A, C, D)
or require this Court to make fact determinations that are
inappropriate for resolution on a motion to dismiss (Exhibits F,
G). <u>See, e.g.</u>, <u>In re Donald J. Trump Casino Sec. Litig.- Taj
Mahal Litig.</u>, 7 F.3d 357, 368 n.9 (3d Cir. 1993). In particular,
while Plaintiff's emails to Brightview regarding her resignation
arguably may be considered by this Court because they are cited
in and integral to her retaliatory discharge claim, they present
a factual dispute as to whether or not Plaintiff voluntarily
resigned from her position (or just her full-time status). (<u>See</u>
Compl. ¶¶ 29-38, 45-47, 59-64; Exs. E-G to the LaMartina Decl.)
Thus, even to the extent that the Court considers any of
Defendants' exhibits in deciding this motion, they do not alter
this Court's conclusions.

    **a. <u>Count One: Sexual Harassment</u>**

Defendants first challenge Plaintiff's claim under the NJLAD for sexual harassment based on a hostile work environment. (Defs.' Br. at 8; Compl. ¶¶ 80, 81.) Sexual harassment based on a hostile work environment "occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." <u>Lehmann v. Toys R Us, Inc.</u>, 132 N.J. 587, 601 (1993). To state a hostile work environment claim, Plaintiff must demonstrate that "[the] complained-of conduct (1) would not have occurred <u>but for</u> employee's protected status, and was (2) <u>severe or pervasive</u> enough to make a (3) <u>reasonable woman</u> believe that (4) the conditions of employment have been altered and that the <u>working environment is hostile or abusive</u>." <u>Id.</u> at 603-604; <u>see also</u> N.J.S.A. 10:5-12(a). Defendants first argue that, as a matter of law, a professional caregiver such as Plaintiff may not bring a claim under the NJLAD based upon the harassing conduct of a mentally impaired patient. (Defs.' Br. at 8.) In addition, Defendants contend that, even if Plaintiff can bring such a claim, it is meritless because Plaintiff's response was "idiosyncratic" and thus fails to satisfy the "reasonable woman" requirement. (Defs.' Br. at 8.) The Court addresses each of Defendants' arguments in turn.

       i.   **<u>Defendants' Liability for Acts of Non-Employees</u>**

In support of its argument that a professional caregiver
may not, as a matter of law, bring NJLAD claims based upon the
harassing conduct of a mentally impaired patient, Defendants
offer Berberian v. Lynn, 179 N.J. 290, 292 (2004). There, the
Court addressed claims brought by the head nurse of a care
facility against an institutionalized patient with dementia for
personal injuries sustained when the patient pushed her. 179
N.J. at 292. In holding that "a mentally disabled patient, who
does not have the capacity to control his or her conduct, does
not owe his or her caregiver a duty of care," it reasoned that:

> the professional caregiver's situation poses concerns
> much like those underlying the fireman's rule. Like a
> fireman who chooses his or her profession and accepts
> the risks engendered by another's negligence in
> starting fires, see Krauth v. Geller, 31 N.J. 270,
> 273-74 (1960) (holding a homeowner does not owe a
> firefighter a duty of care with respect to a
> negligently caused fire), the professional caregiver
> chooses his or her profession and willingly accepts
> the risk engendered by another's poor mental health.
> Just as a fireman has an obligation to deal with the
> hazards of another's burning building, see ibid., the
> professional caregiver has the obligation to deal with
> the hazards of a patient's uncontrollable conduct.
> Thus, the professional caregiver may not recover for
> the conduct of a patient when this conduct is, in
> part, the reason for the caregiver's role.

Id. at 302-03. In so holding, however, the Berberian decision
focused on the relationship between the patient and the
caregiver and addressed only claims brought against the patient.
See, e.g., id. at 301-02. This is not the situation here.
Plaintiff is suing her employer and its parent company – not

P.L. - for Defendants' failure to address P.L.'s harassing behavior. (Compl. ¶¶ 2, 3.)

New Jersey courts have not squarely addressed the issue of an assisted living center's liability under the NJLAD for a patient's harassing conduct towards an employee. However, under the NJLAD, an employer may be liable for hostile work environment sexual harassment committed by certain non-employees (e.g., patrons or independent contractors) if the employer knew or should have known about the conduct, had control over the harasser, and failed to "promptly and effectively act to stop [the conduct.]" Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 268 (N.J. Super. Ct. App. Div. 1996); see also Rosemary Alito, New Jersey Employment Law 258 (2014). In Woods-Pirozzi, the court relied upon the Equal Employment Opportunity Commission ("EEOC") Guidelines interpreting Title VII,[2] which similarly provide that:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility

---

[2] "In construing the terms of the LAD, [New Jersey courts have] frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964, as 'a key source of interpretive authority.'" Lehmann, 132 N.J. at 600 (quoting Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97 (1990)).

which the employer may have with respect to the
conduct of such non-employees.

29 C.F.R. § 1604.11(e); 290 N.J. Super. at 268.

Courts that have adopted the EEOC Guidelines have applied
them to cases concerning patient conduct and have found that
employers may be held liable for a patient's harassment of an
employee if "the employer knew or should have known of the
harassment and failed to take appropriate remedial action."
Crist v. Focus Homes, Inc., 122 F.3d 1107, 1110-11 (8th Cir.
1997) (finding that employer's liability in action brought by
former employees at a facility for developmentally-disabled
persons turned on whether employer's response to patient's
harassing conduct was "immediate or timely and appropriate in
light of the circumstances"); see also Turnbull v. Topeka State
Hosp., 255 F.3d 1238, 1244 (10th Cir. 2001) (finding, in action
by employee against employer hospital under Title VII for
injuries sustained in sexual assault by patient, that one or
more jurors could reasonably believe employer's preventative
measures were inadequate); Anania v. Daubenspeck Chiropractic,
718 N.E.2d 480, 483-84 (Ohio Ct. App. 1998)(finding, in action
by employees against employer chiropractic clinic under state
civil rights statute, that employer could be liable for
patient's behavior if it knew or should have known about the
conduct and failed to take corrective action). Accordingly,

11

because the NJLAD specifically provides for employer liability for the conduct of non-employees, and because New Jersey courts have relied upon the EEOC Guidelines in construing the NJLAD, this Court finds that a sexual harassment claim against an employer based upon its failure to adequately address a patient's harassing conduct is a cognizable claim under the NJLAD.

When assessing employer liability for harassment by non-employees under the NJLAD and Title VII, courts apply a negligence theory. See Woods-Pirozzi, 290 N.J. Super. at 272; Graves v. Cnty. of Dauphin, 98 F. Supp. 2d 613, 620-21 (M.D. Pa. 2000)(citing Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997)). An employer may be held liable for the harassing acts of non-employees if it "fail[s] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." Hirschfeld v. New Mexico Corr. Dep't, 916 F.2d 572, 577 (10th Cir. 1990) (citations omitted). This analysis considers (1) the employer's actual or constructive knowledge of the harassing conduct, and (2) the adequacy of the employer's remedial and preventative responses. See Turnbull, 255 F.3d at 1244 (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir. 1998)). The focus of this analysis is on the employer's response, not the conduct itself. See Turnbull, 255 F.3d at 1244

(explaining that "a hospital cannot control every act of its patients, but it does control the environment at large") (citing Crist, 122 F.3d at 110-12).

A plaintiff "may prove actual knowledge based on her reports of harassment to management-level employees or constructive knowledge based on the pervasiveness of the sexual hostility within the working environment." Turnbull, 255 F.3d at 1244 (citation omitted). Here, Plaintiff alleges that she promptly reported P.L.'s harassing conduct towards her and others to at least one of her supervisors after most of the alleged incidents. (Compl. ¶¶ 22, 25, 37-38, 44, 45, 49-50, 54.) Therefore, Plaintiff has sufficiently alleged that Brightview had actual or constructive knowledge of P.L.'s harassing conduct.[3]

---

[3] Brightview argues that Plaintiff's failure to follow the reporting mechanism of its Workplace Discrimination and Harassment/Sexual Harassment Policy (the "Policy") is futile to her claim. (Defs.' Br. at 9-10.) The Policy states "[a]ny associate who is subjected to sexual harassment should immediately contact the Executive Director of your community and/or the Home Office Human Resource Manager." (Ex. B.) Plaintiff alleges, however, that she immediately informed her supervisors, including Clinkscales, the Executive Director, of P.L's behavior on several occasions. (Compl. ¶¶ 25, 57.) Moreover, Plaintiff's failure, if any, to use the formal reporting mechanism may impact the viability of her claim at a later stage in this litigation but is not dispositive of Defendants' motion to dismiss. See Ligenza v. Genesis Health Ventures of Massachusetts, Inc., 995 F. Supp. 226, 231 (D. Mass. 1998).

Turning to the second inquiry, there is no bright-line rule for assessing the "appropriateness" of an employer's response. See Turnbull, 255 F.3d at 1244-45. However, courts must consider whether, under the totality of the circumstances, the employer's remedial and preventative action was "'reasonably calculated to prevent further harassment.'" Knabe, 114 F.3d at 412 (quoting Ellison v. Brady, 924 F.2d 872, 882 (9th Cir. 1991) (alteration in the original)); see also Crist, 122 F.3d at 1111. Relevant factors include (1) the promptness and the effectiveness of the employer's action, see Adler, 144 F.3d at 676, (2) the employer's level of control over the patient's behavior, 29 C.F.R. ¶ 1604.11(e), and (3) the plaintiff's expectations given her choice of employment, see Turnbull, 255 F.3d at 1245 ("In an environment like [a hospital] it would be impossible to eliminate all potential risk; instead, we ask whether the hospital took reasonable measures to alleviate known or obvious risks.") (citation omitted).

Although Plaintiff alleges that Brightview took no action to end P.L.'s harassing conduct (Compl. ¶ 45), she also alleges that, on one occasion, Gil indicated she was "working on getting [P.L.] the proper medication" (id. at ¶ 23). While properly medicating a patient may be part of an employer's remedial action, at this stage – without discovery – it cannot be determined whether the medication was effective or "reasonably

14

calculated to end the harassment."[4] <u>Ellison</u>, 924 F.2d at 882.

<u>C.f.</u> <u>Ligenza</u>, 995 F. Supp. at 231 ("It is undisputed that [the
defendant] knew that the Patient who was sixty-nine years old,
depressed and bedridden, made inappropriate, often sexual,
comments to female staff workers. For that very reason,
[defendant] devised a care plan to address both his mental
health and his misconduct[.] . . . When the Patient's behavior
persisted, a more intensive regimen was implemented, including
counseling and psychotherapy."). However, Plaintiff also alleges
that on two other occasions, Campbell spoke with P.L. regarding
his behavior (<u>id.</u> at ¶ 26), and Gil informed Plaintiff that
Brightview intended to speak with P.L.'s family regarding his
conduct (<u>id.</u> at ¶ 52).[5] Thus, while discovery may prove
otherwise, at this juncture Plaintiff has sufficiently alleged
that Defendants failed to take appropriate remedial measures.

---

[4] Plaintiff completed a Resident Incident Report (Compl. ¶ 38),
which indicates that P.L. was to be psychiatrically evaluated
due to his behavior (Ex. E), and Defendants maintain that the
psychiatric evaluation was conducted. If the evaluation was
completed, this may provide additional evidence of Brightview's
response to Plaintiff's complaints. But this is an issue of fact
inappropriate for resolution on a motion to dismiss.

[5] If P.L. was in fact admitted to Brightview on November 14, 2012
as Defendants contend, then P.L.'s conduct towards Plaintiff and
others, as well as any responsive action by Brightview, occurred
within a two-week time period. Assuming discovery demonstrates
that Brightview agreed to speak with the family and was working
to adjust P.L.'s medication in an effort to alter his behavior,
Defendants could be found to have acted promptly and
appropriately within that time. While this may be an issue for
summary judgment, it does not dispose of the instant motion.

Brightview notes that its ability to act is limited by P.L.'s rights under state and federal law (Defs.' Br. at 10) (citing N.J.A.C. 8:36-5.14 which requires that notice of discharge be given at least 30 days in advance and include the reason for discharge as well as the resident's right to appeal). Even if true, Plaintiff has alleged that Defendants failed to take sufficient remedial action in response to her complaints regarding P.L.'s behavior. In any event, this Court does not believe that Defendants can "shield" themselves from liability altogether under the NJLAD by citing any such regulation. See Ligenza, 995 F. Supp. at 230 ("Although patients have rights, employees of long term care facilities also have the right to a workplace free from sexual harassment. Thus, [the defendant] may not disclaim all responsibility toward its employees in the name of patient care.").

### ii.   "Reasonable Woman" Requirement

Next, Defendants appear to argue that Plaintiff cannot establish the "reasonable woman" requirement of her hostile work environment claim because her alleged response to P.L.'s conduct was that of an "idiosyncratic" or "hypersensitive" woman. In response, Plaintiff argues that Defendants have failed to adduce sufficient facts demonstrating that Plaintiff was a "hypersensitive" woman and, in any event, this factual inquiry

16

is inappropriate for resolution on a motion to dismiss. This
Court agrees.

As the New Jersey Supreme Court explained in <u>Lehmann</u>, while
separate inquires to some extent, the second, third, and fourth
prongs of a hostile work environment claim "are interdependent."
<u>Id.</u> at 604. "One cannot inquire whether the alleged conduct was
'severe or pervasive' without knowing <u>how</u> severe or pervasive it
must be. . . . [T]he conduct must be severe or pervasive enough
to make a reasonable woman believe that the conditions of
employment are altered and her working environment is hostile."
<u>Id.</u> Utilizing an objective and gender-specific reasonableness
standard, courts should focus "on the nature and legality of the
conduct[,] rather than on the reaction of the individual
plaintiff[.]" <u>Lehmann</u>, 132 N.J. at 612. The question of whether
the harassing conduct was sufficiently severe or pervasive
enough to alter the conditions of employment is considered from
the perspective of a reasonable woman "in the plaintiff's
position." <u>See</u> <u>Lehmann</u>, 132 N.J. at 592, 611-12; <u>see</u> <u>also</u> <u>Crist</u>,
122 F.3d at 1111 (stating that a plaintiff's expectations given
her choice of employment is relevant to the determination of
whether an environment is objectively "hostile" or "abusive");
<u>Shnaidman v. State, et al.</u>, 2013 WL 1776098 (N.J. Super. Ct.
App. Div. Apr. 26, 2013) ("[T]he nature of the workplace — here,
to treat and discuss sexually violent predators — [is relevant

to] determining whether comments related to the residents can be considered harassing."). Therefore, "[o]nly an idiosyncratic response of a hypersensitive plaintiff to conduct that a reasonable woman would not find harassing is excluded by the reasonable woman standard." Id. at 614.

Considering the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has alleged sufficient facts to state a claim for sexual harassment based on a hostile work environment under the NJLAD. The Complaint alleges that P.L. grabbed or attempted to grab Plaintiff's rear end on at least six specific occasions in October and November (Compl. ¶¶ 21, 24, 36, 41, 50, 53), and made sexually explicit comments to her (id. at ¶¶ 31-33, 36-37). In addition, the Complaint alleges that P.L. fondled the breasts of another female employee, engaged in sexually explicit conversations with female residents, and touched other female staff on a regular basis. (Id. at ¶¶ 18, 28-28, 41.) See Lehmann, 132 N.J. at 611 ("[P]laintiff's work environment is affected not only by conduct directed at herself but also by the treatment of others. A woman's perception that her work environment is hostile to women will obviously be reinforced if she witnesses the harassment of other female workers."). On one occasion, after P.L. sexually propositioned a female resident, Plaintiff completed a Resident

Incident Report.[6] (Compl. ¶¶ 33-35, 38; Ex. E.) Based upon these allegations, the Court cannot hold at this stage that Plaintiff's response was "idiosyncratic" or that of a "hypersensitive woman." Cf. Woods-Pirozzi, 290 N.J. Super. at 271.

In support of their argument, Defendants offer Lombardi v. Cosgrove, where the court addressed a supervisor's use of the words "fuck" and "Goddammit" during a single conversation with the plaintiff. 7 F. Supp. 2d 481, 485 (D.N.J. 1997), aff'd, 216 F.3d 1076 (3d Cir. 2000). There, the court found that the supervisor's comments were neither severe nor pervasive enough to establish a hostile work environment claim, reasoning that no reasonable woman would believe that "a supervisor's use of those words on one occasion make a working environment hostile or abusive." Id. at 495. But, this case is factually and procedurally distinguishable. Unlike in Lombardi, Plaintiff alleges harassing conduct, including unwanted touching and sexually explicit comments, that were directed at her, other female employees, and residents on several occasions throughout October and November. Moreover, Lombardi was decided on a motion

---

[6] The Court may consider the Resident Incident Report that Plaintiff completed regarding the incident with P.L. on November 22, 2012 (Ex. E) because the Complaint not only explicitly cites the report, but also relies upon it and the underlying incident as demonstrative of the harassing conduct Plaintiff endured. (Compl. ¶¶ 33-35, 38.)

for summary judgment, not a motion to dismiss, such as the one before the Court. 7 F. Supp. 2d at 484.

Defendants also seem to suggest that Plaintiff's response was idiosyncratic because she was expected, as part of her job responsibilities, to "encounter traumatic situations, such as having to care for mentally ill residents." (Defs.' Br. at 4; Ex. C.) Similarly, Defendants argue that Plaintiff cannot state a claim based upon a patient's conduct because she assumed the risks of her employment. (Defs.' Br. at 10.) In other words, "Plaintiff's job responsibilities required her to care for residents with mental illness, and dealing with P.L.'s inappropriate comments and actions was part of Plaintiff's job." (Id.) However, courts have rejected this argument under Title VII, which does not have a "reasonable woman" requirement. For example, the Crist court explained that if it were to accept Defendant's argument, it would "essentially permit[] a residential care provider . . . to tell its employees that they assume the risk of working with developmentally disabled individuals and that they have no right to expect a safe working environment."[7] Crist, 122 F.3d at 1110; see also Turnbull, 255 F.3d at 1245 (rejecting defendant's argument that the plaintiff

---

[7] This is not to say that a jury will not be persuaded by Defendants' argument. Indeed, it is possible that a jury may consider Plaintiff's job description and expectations in assessing, for example, an appropriate award of damages, if any.

20

assumed the risk "of facing sexually hostile, aggressive patients").

Considering the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has alleged sufficient facts to state a claim for relief based upon Defendants' alleged failure to adequately address P.L.'s harassing conduct. Accordingly, Defendants' motion to dismiss Plaintiff's hostile work environment claim is denied.

### b. Count Two: Retaliatory Discharge

Defendants next challenge Plaintiff's claim for retaliatory discharge under the NJLAD. (Defs.' Br. at 8; Compl. ¶¶ 82-84.) The NJLAD provides, "[i]t shall be an unlawful employment practice, or, as the case may be, unlawful discrimination . . . for any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . ." N.J.S.A. § 10:5-12(d). To establish a claim of retaliatory discharge under the NJLAD, Plaintiff must demonstrate that: "(1) she was engaged in a protected activity known to the defendants; (2) she was thereafter subjected to an adverse employment decision; and (3) there was a causal link between the two." Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 619 (D.N.J. 1998). The McDonnell Douglas burden-shifting framework applies to retaliatory discharge claims brought under the NJLAD. See Hughes v. Home Depot, Inc., 804 F.

Supp. 2d 223, 227 (D.N.J. 2011). Thus, once Plaintiff establishes the requisite elements, Defendants must "articulate a legitimate, nonretaliatory reason for the decision." <u>Reyes</u>, 997 F. Supp. at 619. Thereafter, Plaintiff must show Defendants' "discriminatory motive . . . and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." <u>Id.</u> (quoting <u>Jamison v. Rockaway Tp. Bd. of Educ.</u>, 242 N.J. Super. 436, 445–47 (N.J. Super. Ct. App. Div. 1990)).

Defendants argue that Plaintiff has failed to establish that she was subjected to an adverse employment decision, claiming that Plaintiff resigned from her position at Brightview. (Defs.' Br. at 10–11.) In support, Defendants cite to Plaintiff's emails. Specifically, on November 29, 2012, Plaintiff emailed the Resident Services Director, stating:

> I didn't have time to write a formal letter but as of 12-13-12 I will not be able to fulfill my full-time status at BVWBL. I apologize for any inconvenience this may cause with the schedule. I will type a formal letter of resignation and we can discuss my future schedule at that time.

(Ex. F.) Then, on December 6, after Plaintiff was asked not to return, she sent a lengthy email to several individuals in which she stated that she "did not resign from the company" but "resigned from working full-time." (Ex. G. <u>But see</u> <u>id.</u> ("I resigned from the coordinator position . . . .").) Plaintiff maintains that she only intended to resign from her full-time

22

position at Brightview and thus Brightview terminated her on December 6 when the Executive Director told her not to return to work. (Compl. ¶¶ 45-47).

Whether Plaintiff's November 29, 2012 email constitutes a resignation from Brightview or simply a resignation from her full-time status is an issue of fact that is inappropriate for resolution on a motion to dismiss. Nonetheless, drawing all reasonable inferences in Plaintiff's favor, which the Court is required to do on a motion to dismiss, the Court finds that Plaintiff's email could be interpreted as indicating her desire to reduce the number of hours she worked for Brightview. Moreover, Plaintiff had informed the Executive Director of her complaints regarding P.L.'s conduct, and thus it could be inferred that the Executive Director was "tired of [Plaintiff] always complaining" about P.L.'s harassing conduct. As such, her instruction that Plaintiff not return to work may constitute a termination in retaliation for Plaintiff's complaints of sexual harassment. (Compl. ¶¶ 61-62.) Therefore, Plaintiff has sufficiently plead a claim for retaliatory discharge.[8]

---

[8] Count Three of the Complaint is styled as a separate cause of action for equitable relief. (Compl. ¶¶ 85-93.) Defendants are correct that an equitable remedy is not cognizable as a separate and distinct cause of action, but must be associated with an underlying substantive claim. (Defs.' Br. at 11); see Teri Woods Pub., L.L.C. v. Williams, 2013 WL 1500880 (E.D. Pa. Apr. 12, 2013) (citation omitted). Defendants seek dismissal of the request for equitable relief on grounds that, because Plaintiff

### c. **Plaintiff's Claims Against Shelter**

Lastly, Defendants argue that Plaintiff has failed to "allege any facts upon which to base a claim against Shelter." (Defs.' Br. at 11.) The Court agrees.

The Third Circuit has recognized that, "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 513 (3d Cir. 1996) (quoting Johnson v. Flowers Indus., Inc., 814 F.2d 978 (4th Cir. 1987)); see also Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 363 (E.D. Pa. 1998). Indeed, "courts have found parent corporations to be employers only in extraordinary circumstances." Marzano, 91 F.3d at 513 (quoting Johnson, 814 F.2d at 981); Martin, 17 F. Supp. 2d at 363 (same).

To determine whether a parent corporation is an "employer" in the context of employment discrimination, "the four-factor 'integrated enterprise' test is most appropriate." Martin, 17 F. Supp. 2d at 363 (concluding that the integrated enterprise test is essentially the same as the Third Circuit's veil-piercing analysis in Marzano); see also Johnson v. Cook Composites and

---

failed to satisfy her pleading obligations with respect to her substantive claims, she cannot recover equitable relief. (Defs.' Br. at 11.) However, as discussed above, the Court will sustain Plaintiff's claims and, thus, it will not dismiss Plaintiff's demand for equitable relief at this time.

Polymers, Inc., 2000 WL 249251 at *3-4 (D.N.J. March 3, 2000)
(same). The four factors are: "(1) functional integration of
operations; (2) centralized control of labor relations;
(3) common management; and (4) common ownership." Martin, 17 F.
Supp. 2d at 362. The Court recognizes that "the four-pronged
inquiry is not to be rigidly applied" and that employer status
"ultimately depends on all the circumstances of the case."
Id. at 362-63.

    The Complaint alleges that Plaintiff was a joint employee
of Brightview and its parent company, Shelter. (Compl. ¶¶ 1-2.)
It further alleges that Shelter is liable to Plaintiff "on the
grounds that it is responsible for policy and practice at the
facility." (Id. at ¶ 79.) While Shelter's control of
Brightview's policies and practices is relevant to the
determination of whether Shelter may be held liable, that fact
alone is insufficient to establish that Shelter and Brightview
were "'so interrelated and integrated in their activities, labor
relations and management' that [the Court] should pierce the
corporate veil." Marzano, 91 F.3d at 514 (dismissing the
plaintiff's claims against the parent company, where she alleged
the parent company drafted the subsidiary's policy and sent her
paychecks)(citation omitted). Accordingly, Plaintiff has failed
to allege sufficient facts that, when taken as true, demonstrate

that Shelter is Plaintiff's employer and thus the claims against Shelter are dismissed without prejudice.

**IV.     <u>Conclusion</u>**

For the reasons set forth above, Defendants' motion to dismiss is denied in part and granted in part, and the claims against Defendant are dismissed without prejudice.


Date: <u>August 7, 2014</u>

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE